Jacob Liss, Respondent, *v.* United States Fidelity and Guaranty Company, Appellant.

(Supreme Court, Appellate Term, First Department, April, 1918.)

Insurance (burglary)— covenants contained in policy of — lease —
    assignment for benefit of creditors.

> A covenant in a policy of burglary insurance, that it shall be void if the condition or circumstances of the risk are changed without the written consent of the insurer, means that any change that affected the risk is sufficient to relieve the insurer whether it increased or decreased the risk.
>
> A covenant that the premises shall not be occupied for any purpose other than that stated in the schedule, *i. e.,* "Manufacturers Ladies Waists," is violated where the insured sublets a part of the premises to a manufacturer of embroideries; such subletting is also a change of the "condition or circumstances" of the risk, and as matter of law the policy is unenforceable.
>
> A general assignment for the benefit of creditors made by the insured after the making of the sublease, under which the assignee took possession, changed the locks on the doors and excluded all persons including his assignor from the premises, also worked an indubitable change in the "condition or circumstances of the risk."

Appeal by defendant from judgment of the City Court of the city of New York in favor of plaintiff,

entered upon the verdict of a jury; and from an order denying defendant's motion for a new trial.

Leonidas Dennis (William J. McArthur, of counsel), for appellant.

Campbell & Markowitz (Arthur C. Mandel, of counsel), for respondent.

MULLAN, J.  The recovery here was upon a policy of burglary insurance issued to plaintiff on September 25, 1916, and which ran for one year.  The plaintiff, a manufacturer of "ladies waists," occupied the tenth floor of a loft building.  In November, 1916, he leased a part of this loft to one Hyman, a manufacturer of embroideries.  On March 6, 1917, the plaintiff made an assignment for the benefit of creditors, and the assignee took immediate possession and control.  Four days later, on March tenth, the alleged burglary occurred.  The policy provided that as a condition of recovery thereupon there must be "visible evidence" of "forcible and violent entrance upon the premises or exit therefrom," and while the proof as to this was, perhaps, not over-convincing, it was sufficient to create a question of fact for the jury.  The policy also relieved the insurer from liability "if the accounts of the assured are not so kept that the actual loss may be accurately determined therefrom."  The books were put in evidence, and, although the defendant claims that they are incomprehensible, they are not before us, the contention does not appear to be seriously urged, and we shall assume that the books are sufficient for the purpose.  Another contention made by the defendant is that, because of the assignment made by him, the plaintiff had no insurable interest at the time of the alleged burglary, but we think this position is not tenable for the reason that the plain-

tiff was entitled to the return of any surplus left after the payment of his creditors. We now reach the claimed defects in the plaintiff's case that are more seriously urged and more confidently relied upon by the defendant. The policy provided that " the company shall not be liable * * * (5) if the premises are occupied for any purpose other than that stated in the schedule." In the schedule we find: " 5. Occupation of the insured is Manufacturers Ladies Waists." We think that the addition to, and therefore change *pro tanto* in, the use, occasioned by the sub-lease to Hyman, was a violation of the covenant in question. We also think that this sub-lease was a violation of another covenant, which provided that: " 6. This policy shall be void if the condition or circumstances of the risk are changed without the written consent of the company, etc." The putting of Hyman and his employees into possession of part of the premises was certainly a change of the " condition or circumstances." As was said by Judge Bartlett in *Germania Fire Ins. Co.* v. *Home Ins. Co.*, 144 N. Y. 195: " The contract of insurance is peculiarly personal in its nature, and the success of the business of underwriting depends largely on what is known as the moral hazard." Is it to be said that we are to infer that the company would have been willing to issue the policy with Hyman in as a sub-tenant, and then proceed upon the assumption that as the company would have assented it did in fact assent? It would seem to be obvious that we have no such right or power, but, whatever may be thought of the sub-lease to Hyman, we think the general assignment must be held to have worked an indubitable change in the condition and circumstances of the risk. By the assignment plaintiff relinquished the right of control over and the possession of his stock in trade, and the

assignee in fact took possession, changed the locks on the doors, and excluded all persons, including the plaintiff, from the premises.   The assignee cannot be regarded as a sort of manager for the plaintiff *quoad· hoc.*   Here he was the credit man of one of the plaintiff's creditors.

The court charged the jury, upon the request of defendant's counsel, that both the sub-lease and the assignment created changes of the condition and circumstances of the risk, but left it to the jury to say whether those changes or either of them increased the risk.   In the view we take of the case, it is not necessary to pass upon the charge, as we think that upon the undisputed facts there should have been a direction for the defendant.   But the charge shows what we believe to have been the erroneous view adopted, by the learned trial justice.   In our opinion the proper construction of the covenant in question is that any change *that affected the risk* was sufficient to relieve the insurer, whether it increased or decreased the risk. The policy did not leave to the assured, or to a court or jury, to determine whether a given change *increased* the risk.   It is plain that it would be next to impossible to say of many changes that they would have a natural tendency to increase the risk.   If, for example, the assured sold groceries and then changed his business to that of selling dry goods, would that change increase the risk?   Let us assume that no proof could be produced to show that such a change increased the risk; would the change of business not be, of itself, a change in the condition or circumstances of the risk? The insurer, we think, has the right to determine those questions under the · provision under discussion; indeed, the provision would seem to have been inserted in the policy for the very purpose of saving to the insurer the right to determine whether there has been

any material departure from the nature of the risk accepted at the time of the making of the insurance contract. It is true that there are many changes that could probably be said, as matter of law, not to affect the risk, such as the normal changes of stock, or fixtures, or the painting of a house, etc.; while in doubtful cases it would be for the jury to say whether the nature of the risk was affected by the change. But as an insurance contract is peculiarly personal in its fundamental aspect (*Lee* v. *Adsit,* 37 N. Y. 78; *Germania Fire Ins. Co.* v. *Home Ins. Co., supra*), and as the personal equation enters to an unusual degree in the case of burglary insurance (*Wolowitch* v. *National Surety Co.,* 152 App. Div. 14, 22), it is our conclusion that upon the conceded facts the act of the plaintiff in ‘voluntarily divesting himself of control over his premises and goods was a clear departure from an essential condition of the risk accepted by the insurer, and that, as matter of law, the policy was unenforceable.

Judgment reversed, with costs, and judgment directed for the defendant, with costs.

BIJUR and FINCH, JJ., concur.

Judgment reversed, with costs.